NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250658-U

NO. 4-25-0658

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 17, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| ANTWIONE E. CRAIG, | ) | No. 19CF517 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jack D. Davis II, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:    (1) Defendant failed to establish that the trial court committed reversible error by considering an improper sentencing factor.

(2) The trial court did not abuse its discretion in sentencing defendant to 12 years in prison.

¶ 2        Defendant, Antwione E. Craig, pleaded guilty to driving while his driver's license was revoked (DWLR) (625 ILCS 5/6-303(a), (d-5) (West 2018)), as a Class 2 felony, and was sentenced to 36 months' probation. His probation was later revoked and he was resentenced to 12 years in prison. Defendant appeals, arguing (1) the trial court relied on an improper consideration at his resentencing and (2) his 12-year prison sentence was excessive and manifestly disproportionate to the nature of the offense. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In August 2019, the State charged defendant with DWLR (*id.*), a Class 2 felony.

The charge was based on allegations that on or about March 30, 2019, defendant drove a motor vehicle at a time when (1) his driving privileges were revoked for driving under the influence (DUI) pursuant to section 11-501 of the Illinois Vehicle Code (*id.* § 11-501) or a statutory summary suspension or revocation under section 11-501.1 of the Vehicle Code (*id.* § 11-501.1) and (2) he had previously committed the same violation "on 16 or more prior occasions."

¶ 5        In June 2023, defendant pleaded guilty to the charged offense. In exchange for his plea, he received a sentence of 36 months' probation and the dismissal of other pending charges against him. But see *id.* § 6-303(d-5) (providing that the charged offense was "not eligible for probation or conditional discharge"). Conditions of his probation included that he complete a drug and alcohol evaluation and any recommended treatment, complete anger management counseling, continue with mental health treatment, and refrain from driving without a valid driver's license. During defendant's plea hearing, the State presented a factual basis, asserting its evidence would show that on March 30, 2019, a police officer with the City of Springfield conducted a traffic stop of a vehicle being driven by defendant and that the underlying offense was defendant's "21st conviction for [DWLR]."

¶ 6        In July 2024, the State filed an amended petition to revoke defendant's probation. It alleged defendant violated his probation by (1) committing additional offenses, including DWLR in June 2023, August 2023, February 2024, and April 2024, and aggravated DUI in February 2024 and April 2024 (paragraph 4a); (2) failing to report to various probation appointments from July 2023 to March 2024 (paragraph 4b); (3) testing positive for alcohol, marijuana, and fentanyl in August 2023 and alcohol and marijuana in January 2024 (paragraph 4(c); (4) failing to pay monthly probation fees (paragraph 4d); (5) failing to promptly undergo a drug and alcohol assessment, engage in anger management, or verify his ongoing mental health

treatment (paragraph 4e); and (6) driving without a valid driver's license (paragraph 4f).

¶ 7 In March 2025, the trial court conducted a hearing on the State's amended petition to revoke. The State presented testimony from Sangamon County Probation Officer Kristy Metz and Illinois State Police Trooper Andrew Cox. Metz testified that while on probation, defendant was required to attend scheduled meetings with court services, refrain from using controlled substances, undergo drug screenings, and engage in anger management treatment and mental health treatment. However, he missed several scheduled appointments with court services, had drug screens that were positive for controlled substances in August 2023 and January 2024, and failed to provide documentation showing that he had engaged in either anger management treatment or mental health treatment.

¶ 8 Cox's testimony showed that in February 2024, he initiated a traffic stop of a vehicle after observing that the male driver was not wearing a seat belt. He identified defendant as the driver of the vehicle and stated he ultimately arrested defendant for DUI. Cox testified that defendant submitted "to an evidential breath test" and that his breath alcohol result of 0.262 was over the legal limit.

¶ 9 The trial court found the State presented sufficient evidence to meet its burden of proof in establishing one or more of the allegations in its amended petition to revoke. It made express oral findings that the State had proved paragraphs 4b, 4c, 4e, and 4f of the amended petition. The court then revoked defendant's probation and set the matter for resentencing.

¶ 10 In May 2025, defendant's presentence investigation report (PSI) was filed, showing he was 44 years old at the time of the charged offense and 50 years old at the time of resentencing. Defendant had a lengthy criminal history, with a prior adult record dating back to 1992. His history included misdemeanor convictions for "Mob Action/Fail to Withdraw" (May 1992), resisting or

obstructing a peace officer (May 1992, May and June 1993, January 1995, March 1998, and September 2011), criminal trespass to land (October 1994), possession of cannabis (September 1999 and December 2005), battery causing bodily harm (October 2001), DUI (December 2005 and April 2007), "Fail/Return From Furlough" (September 2008), theft (January 2013), and domestic battery (August 2016).

¶ 11　　　Defendant also had multiple prior felony convictions. In July 1993, he was convicted of possession of a controlled substance, a Class 4 felony, and sentenced to 30 months' probation. His probation was later revoked and, in December 1993, he was resentenced to 30 months in the Illinois Department of Corrections (DOC). In August 2004, defendant was convicted of possession of a controlled substance, a Class 4 felony, for a second time and sentenced to two years in DOC. In September 2004, he was paroled but, in January 2005, he returned to DOC on a parole violation. In February 2009, defendant was, again, convicted of possession of a controlled substance, a Class 4 felony, and sentenced to 30 months in DOC. Further, in August 2016, defendant was twice convicted of "Other Amount Narcotic," a Class 2 felony, in Sangamon County case Nos. 13-CF-1138 and 15-CF-776. He was sentenced to three years in DOC in each case. Defendant's criminal history also included multiple convictions for DWLR. Prior to the underlying felony DWLR charge, which arose in March 2019, he had 20 previous convictions for that offense. Those prior convictions included a Class 4 felony DWLR conviction in August 2004, for which defendant was sentenced to two years in DOC.

¶ 12　　　Additionally, according to the PSI, defendant had seven pending Sangamon County cases. Since April 2024, he had been incarcerated in the Sangamon County jail.

¶ 13　　　The PSI further showed that defendant reported having a poor relationship with both of his parents and that he was raised by his maternal grandmother, who passed away in 2024.

He stated he had no contact information for his parents or any of his four half-siblings. Defendant had never been married but was the father of six adult children, ranging from 21 to 34 years in age. He reported having a girlfriend but declined to provide "further information regarding his girlfriend or children."

¶ 14 The PSI stated that defendant dropped out of high school during the tenth grade. He had not obtained his GED but, in 2011, he did complete one class through Lincoln Land Community College for "Basic Auto Body Repair." As an adult, defendant had lengthy periods of unemployment. Although he reported that he had worked at Dollar General, "doing stocking and security," for approximately one year before his arrest and incarceration in April 2024, he "declined to sign a release of information" so that his employment information could be verified. The PSI also noted that "the Sangamon County Court Services file" otherwise showed that "defendant was not employed when he was sentenced on June 13, 2023[,] or up until his incarceration on April 13, 2024."

¶ 15 Regarding defendant's emotional and physical health, the PSI showed that in November 2014, defendant voluntarily admitted himself to the hospital "due to 'having thoughts of hurting himself or his grandmother[']" and "was diagnosed with mood disorder, NOS, intermittent explosive disorder, rule out bipolar disorder, antisocial personality disorder, alcohol and marijuana dependence, hypertension, and glaucoma." Defendant was discharged two days later and advised where to follow up with his care. At the time of discharge, he "refused to be on any medication." The PSI also stated that DOC records from August 2016 to February 2018, showed defendant was diagnosed with schizoaffective disorder and insomnia. He was prescribed Geodon and trazadone while in prison but refused to take the trazadone because it made "him feel like he did not want to get out of bed in the morning." Defendant continued with the Geodon, but

by the time of his release from DOC in April 2018, he "was not prescribed any medication for his mental health issues." Records from Memorial Behavioral Health showed defendant was "admitted to [that] agency" in November 2014 and "discharged from the agency" in November 2022. He was diagnosed with bipolar disorder and, ultimately, failed to "follow up" with the agency after his release from prison. Additionally, Sangamon County Jail records showed that defendant had been diagnosed with glaucoma and depression and that he had been prescribed medication.

¶ 16 Finally, the PSI showed that defendant acknowledged a history of substance abuse. He reported that he first drank alcohol and used marijuana at the age of 12 or 13. He identified April 2024 as the last time he drank alcohol or used marijuana. Defendant also acknowledged using heroin from January to April 2024, and the PSI noted that in August 2023, he tested positive for alcohol, marijuana, and fentanyl. Following his positive test, defendant was referred for a substance abuse evaluation and treatment. However, defendant stated he never obtained an evaluation or completed any treatment.

¶ 17 In June 2025, the trial court conducted defendant's sentencing hearing. On the State's motion, the court made minor amendments to defendant's PSI. It also noted that it had reviewed the PSI "carefully and in great detail" and stated that although defendant had "a host of pending matters," it would not consider "allegations that ha[d] not been proved." The record further reflects that the court and the parties agreed that defendant faced extended-term sentencing for a Class 2 felony, which subjected him to a sentencing range of 3 to 14 years in prison "to be served at 50[%]." The court noted that while defendant had previously received a sentence of probation, he was ineligible for probation under the relevant statutory provisions.

¶ 18 At the outset of the hearing, the trial court and the parties also discussed the State's

plea offer to defendant in his other pending cases. In doing so, the court questioned defendant regarding his ability to understand the proceedings, resulting in the following colloquy between the court and defendant:

"THE COURT: *** [Defendant], can you hear and understand everything that is happening right now?

[DEFENDANT]: Yes, sir.

THE COURT: Are you under the influence of any type of alcohol or drugs or other substance that's affecting your ability to understand this proceeding today?

[DEFENDANT]: No, sir.

THE COURT: And do you have any type of disability or any type of condition, in your opinion, that is causing you to be unable to understand or appreciate what is happening today?

[DEFENDANT]: Well, I got bipolar disorder and a few other things, and I ain't took my medicine today.

THE COURT: Do you understand despite that what is happening today? Are you understanding this proceeding?

[DEFENDANT]: Yes, sir."

"Defendant further represented to the court that he had "an ample opportunity to talk with [his] attorneys" regarding what was occurring and the plea offer that had been conveyed to him. He stated he understood the terms of the State's offer and rejected it.

¶ 19    The matter then proceeded with sentencing. The State attempted to call Trooper Cox as a witness to testify regarding defendant's commission of "other offenses." However, defendant objected, arguing it was improper for the trial court to consider evidence of his pending

charges in aggravation. Ultimately, the court sustained defendant's objection.

¶ 20    The State then presented a certified copy of defendant's driving abstract from the Office of the Secretary of State, which was admitted into evidence without objection. The driving abstract included the following suspensions and revocations of defendant's driver's license: (1) suspension for driving without a valid license or permit, effective August 29, 1995; (2) revocation for driving without a valid license or permit, effective September 23, 1995; (3) "Safety Responsibility Suspension" for "Uninsured Crash," effective May 31, 1996; (4) statutory summary suspension for failing or refusing an alcohol or drug test, effective June 27, 1997; (5) revocation for DUI, effective June 28, 1998; (6) statutory summary suspension for failing or refusing an alcohol or drug test, effective April 13, 2005; (7) revocation for DUI, effective January 19, 2006; (8) statutory summary suspension for failing or refusing an alcohol or drug test, effective March 26, 2007; (9) a revocation for DUI, effective May 16, 2007; (10) statutory summary suspension for failing or refusing an alcohol or drug test, effective April 4, 2024; (11) statutory summary suspension for failing or refusing an alcohol or drug test, effective June 5, 2024; and (12) statutory summary suspension for failing or refusing an alcohol or drug test, effective July 29, 2024. The driving abstract also showed that defendant had 21 DWLR convictions. Four of those convictions occurred between January 1996 and May 1997, prior to defendant's first statutory summary suspension in June 1997 or DUI revocation in June 1998. The remaining 17 DWLR convictions occurred between March 22, 2001, and March 30, 2019 (the date of the underlying offense).

¶ 21    Defendant gave a statement in allocution. He apologized to his family for being in jail and out of their lives. He also apologized to the trial court and his probation officer for "not attending [the recommended] drug and mental health evaluation[s]." Defendant represented that he had mental health issues and "drug and alcohol addiction." He suggested that he had not been

receiving treatment while incarcerated, despite requesting a mental health assessment. He also asserted that he suffered from bipolar disorder and "wasn't taking [his] meds like [he] was supposed to have been." Defendant maintained that his substance abuse problems "got worse" after his grandmother died, which caused him to "make the wrong choices."

¶ 22        Defendant further stated that he "had plenty of time to think about the wrong choices [he] made." He indicated that he had been incarcerated for "a year and two months for driving," which he found embarrassing. Defendant further stated as follows:

> "I haven't been charged with reckless homicide, I did not hurt nobody, I haven't shot or robbed anybody or did I touch a child, so I'm really not understanding why the State is trying to offer me so much time. I made a lot of bad decisions when I was younger, mostly driving. Only violence was aggravated battery or domestic battery that was either dropped or dismissed or time served."

Defendant maintained that he had "learned [his] lesson" since being incarcerated. He pointed out that while in jail, he had earned an Alcoholics Anonymous (AA) certificate and a domestic violence certificate, and he was "on a list for [a] life skills class." Defendant asked the trial court for leniency and maintained he would not drive without a driver's license in the future.

¶ 23        Defendant submitted an exhibit that contained the various certificates he had received while incarcerated. The certificates demonstrated his attendance at AA meetings in March and April 2025 and his completion of a domestic violence and anger management class in May 2025.

¶ 24        The State argued that defendant should receive a 12-year prison sentence, noting his "extensive criminal history" that extended "all the way back to *** 1992." It also asserted that the underlying offense was defendant's twenty-first DWLR conviction that was "related to [DUI]

dispositions." The State further pointed out that despite initially getting "the benefit of probation on a nonprobationable offense," defendant failed to successfully complete his probation. It maintained that anything other than "a double-digit" sentence would deprecate the seriousness of the offense.

¶ 25 Defendant's counsel asked the trial court to impose a minimum sentence of three years in prison. He acknowledged that defendant's prior probation sentence had been "inconsistent with the law." However, he asserted that sentence was "well thought out" and closer to an appropriate sentence for a "driving case with no victim" than the 12-year sentence requested by the State. Counsel also argued that defendant clearly "suffer[ed] from mental illness," stating he had been diagnosed with schizoaffective disorder, bipolar disorder, and antisocial personality disorder, and he pointed out that defendant had "taken steps to improve" while in jail.

¶ 26 The trial court agreed with the State's recommendation and sentenced defendant to 12 years in prison. In aggravation, the court relied on defendant's lengthy criminal history, which it found demonstrated that he had "zero willingness to conform to society's standards, laws, expectations, and norms," as well as the need for deterrence. In commenting on the factors in aggravation, the court pointed to defendant's 21 DWLR convictions, stating at various times that (1) defendant's criminal history included "21 occasions of convictions of driving while license revoked, DUI-related [DWLR]," (2) "on 21 occasions [defendant] operated motor vehicles without a license," and (3) defendant had "been convicted 21 times of this offense, DUI-related [DWLR]." Additionally, the record reflects the court also relied on its finding that defendant's statement in allocution was "indignant" and indicated his belief that the underlying offense "really wasn't essentially a big deal."

¶ 27 As factors in mitigation, the trial court explicitly noted defendant's struggles with

addiction and his "mental health issues." However, it pointed out that defendant had been given the opportunity to undergo a mental health evaluation while on probation but "[d]idn't do it." The court stated it had "low confidence" that defendant would engage in either substance abuse or mental health services unless he was in "an environment where that was all [he] had to do." Additionally, it noted defendant's evidence that he attended AA meetings and participated in domestic violence and anger management classes while in jail but also pointed out that such attendance and participation did not occur until March 2025, the same month that defendant's probation was revoked.

¶ 28 On June 16, 2025, defendant filed a motion to reconsider his 12-year prison sentence. He argued (1) the trial court failed to adequately consider and weigh mitigating factors and placed excessive weight on aggravating factors, (2) the sentence imposed was excessive considering the nature and circumstances of the offense and his individual characteristics, and (3) the court failed to weigh or consider the fact that he accepted responsibility "at the initial plea." Following a hearing the same month, the court denied defendant's motion, stating it "took careful consideration of the totality of the circumstances" and "all the applicable factors in aggravation and mitigation" and that it believed defendant's 12-year sentence was "absolutely appropriate."

¶ 29 This appeal followed.

¶ 30 II. ANALYSIS

¶ 31 On appeal, defendant argues his 12-year prison sentence was excessive and manifestly disproportionate to the seriousness of the underlying offense. He also contends the trial court committed reversible error by misstating his criminal history and relying on that misstatement in aggravation.

¶ 32 A. Applicable Law and Standards of Review

¶ 33        The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "The trial court must base its sentencing determination on the particular circumstances of each case, considering such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010).

¶ 34        "The standard of review when a defendant contends his sentence is excessive is whether the trial court's sentencing determination constituted an abuse of discretion." *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 99. "An abuse of discretion will be found where the sentence is greatly at variance with the spirit and purpose of the law[ ] or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Snyder*, 2011 IL 111382, ¶ 36; see also *Fern*, 189 Ill. 2d at 54 ("A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.").

¶ 35        Additionally, "[a] trial court abuses its discretion when it considers an improper factor in aggravation." *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 55. "Whether the trial court relied upon an improper factor during sentencing is a question of law reviewed *de novo*." *Id.*

¶ 36        Notably, "reliance on an improper factor in aggravation does not always necessitate remandment for resentencing." *People v. Bourke*, 96 Ill. 2d 327, 332 (1983). "Where the reviewing court is unable to determine the weight given to an improperly considered factor, the cause must be remanded for resentencing." *Id.* "However, where it can be determined from the record that the

weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment is not required." *Id.*; see *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 47 ("Even if the sentencing court mentions the improper fact, a defendant must show that the court relied on the particular improper fact when imposing the sentence."). Further, "there is a strong presumption that the trial court's sentence was based on proper legal reasoning, and a reviewing court should consider the record as a whole rather than a few isolated statements." *Musgrave*, 2019 IL App (4th) 170106, ¶ 55.

¶ 37                              B. Improper Sentencing Factor

¶ 38            Initially, we address defendant's contention that the trial court considered improper evidence at sentencing. Defendant acknowledges that he failed to properly preserve this issue for review. However, he contends the error may be reviewed under the plain-error doctrine because a clear or obvious error occurred and the evidence at his resentencing was closely balanced.

¶ 39            Generally, a defendant forfeits a claim of sentencing error by failing to preserve the error through "both a contemporaneous objection and a written postsentencing motion raising the issue." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). However, the plain-error doctrine provides "a narrow and limited exception" for the review of forfeited claims. *Id.* at 545. To obtain relief under the plain error doctrine, a defendant must "show that a clear or obvious error occurred" and "either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* "In addressing an assertion of plain error, it is appropriate to determine whether reversible error occurred at all," as "[w]ithout reversible error, there can be no plain error." *People v. Jackson*, 2020 IL 124112, ¶¶ 81, 88.

¶ 40            Here, defendant is correct that the trial court misstated his criminal history at sentencing. Specifically, the court twice indicated that all 21 of defendant's DWLR convictions

were "DUI-related" when the evidence at sentencing showed that only 17 of those convictions could be attributed to a DUI-related suspension or revocation. We note that defendant's driving abstract showed that in 1995 and 1996, his driver's license was suspended and revoked for driving without a valid license or permit. Effective May 1996, defendant also had a "Safety Responsibility Suspension." Following those suspensions and revocations, defendant was arrested four times between January 1996 and May 1997 for DWLR. Defendant's first DUI-related suspension was not effective until June 1997, after his first four DWLR arrests. Subsequently, defendant had several other DUI-related suspensions or revocations (in June 1998, April 2005, January 2006, March 2007, and May 2007), and he was arrested 17 more times for DWLR. Thus, contrary to the State's assertions on appeal, the record supports a finding that the court did incorrectly attribute all 21 DWLR convictions to a DUI-related suspension or revocation.

¶ 41    Despite the trial court's misstatement, however, we find no reversible error. First, defendant's criminal history was a proper factor for the court's consideration. See 730 ILCS 5/5-5-3.2(a)(3) (West 2024) (providing that a factor in aggravation is that the defendant "has a history of prior delinquency or criminal activity"). Moreover, in this instance, the conviction for which defendant was being sentenced was, in fact, his twenty-first DWLR conviction. It was also one of 17 DWLR convictions attributable to a DUI-related suspension or revocation.

¶ 42    Second, as indicated, where the record shows that the weight placed on improperly considered evidence "was so insignificant that it did not lead to a greater sentence, remandment is not required." *Bourke*, 96 Ill. 2d at 332. In this case, when considering the trial court's comments at resentencing in their entirety, the record shows the clear significance of its references to defendant's DWLR convictions was the repeated nature of the underlying criminal conduct— driving a vehicle while not authorized to do so—and not on the underlying basis for the revocation

or suspension. Specifically, in discussing the evidence, the court found that defendant's criminal history showed that he was unwilling to conform his conduct "to society's standards, laws, expectations, and norms." In so finding, it emphasized that defendant had "repeatedly on 21 occasions operated motor vehicles without a license." The court's comments on deterrence similarly reflect that it was the repeated nature of defendant's decision to drive without a license that was the court's focus.

¶ 43        Even defendant's four DWLR convictions that were not DUI-related were evidence of his repeated failure to conform his conduct to what the law requires and supported the trial court's rationale. Ultimately, we find any weight that the court placed on its erroneous belief all 21 of defendant's DWLR convictions were DUI-related was insignificant and did not result in a greater sentence. Because defendant cannot demonstrate that there was reversible error, he also cannot demonstrate plain error.

¶ 44                                C. Excessive Sentence

¶ 45        We next address defendant's contention that his 12-year prison sentence was excessive and manifestly disproportionate to the nature of the offense. In challenging his sentence, defendant argues the trial court failed to consider the nature of his underlying conduct, which he contends was "no more serious than the minimal conduct necessary to satisfy the present offense." Defendant also complains that both statutory and nonstatutory mitigating factors applied to warrant a shorter sentence and that the court otherwise erred in its consideration of the evidence presented, including his criminal history.

¶ 46        The record shows defendant pleaded guilty to DWLR as a Class 2 felony (625 ILCS 5/6-303(a), (d-5) (West 2018)). DWLR, which is typically a Class A misdemeanor, becomes a Class 2 felony when a person is "convicted of a fifteenth or subsequent" DWLR violation and both

the current violation and prior convictions were DUI-related. *Id.* § 6-303(d-5). The sentencing range for a Class 2 felony is three to seven years in prison. 730 ILCS 5/5-4.5-35(a) (West 2024). However, because defendant was previously convicted of a Class 2 felony, he was also eligible for an extended-term sentence of up to 14 years in prison. *Id.* §§ 5-4.5-35(a), 5-8-2(a), 5-5-3.2(b)(1).

¶ 47    Here, we find no abuse of discretion by the trial court. In setting forth its sentencing decision, the court stated that it had considered the evidence presented and that it gave "careful[ ]" consideration to defendant's PSI. It also explicitly stated that it had considered "all of the statutory factors in aggravation and mitigation." The record shows the court relied on defendant's lengthy criminal history, noting that it "date[d] back 30-plus years." It referenced defendant's numerous DWLR convictions and pointed out that his history showed he received various sentencing dispositions, including many jail sentences, opportunities for probation and conditional discharge, and three separate terms of imprisonment in DOC. As noted, the court concluded that defendant's record showed his repeated unwillingness to conform his conduct to the law, indicating a lack of rehabilitative potential. It found that the factor of deterrence warranted a lengthy sentence. The court also considered defendant's comments at sentencing, finding they demonstrated his failure to appreciate the seriousness of his conduct. The record contains sufficient support for the court's findings.

¶ 48    On review, defendant suggests the offense at issue and his underlying conduct was not serious, or not serious enough to warrant his 12-year prison sentence. In particular, he asserts that the record contains no evidence that, at the time of his offense, he consumed any alcohol while driving, transported weapons or contraband, committed a traffic violation, or posed any threat to others. Notably, however, the underlying offense did involve defendant's repeated commission of the same type of criminal conduct—DWLR. In fact, the record indicates the charged offense was

defendant's seventeenth DUI-related DWLR conviction, two more convictions than the statutory minimum for charging DWLR as a Class 2 felony.

¶ 49 Additionally, as indicated, a trial court does not view the charged offense in isolation. See *People v. Garcia*, 2018 IL App (4th) 170339, ¶ 37 ("An appropriate sentence must be based upon the particular circumstances of an individual case, including (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for deterrence and punishment."). Here, the court clearly considered the particular circumstances of defendant's case in imposing his sentence, and we can find no error.

¶ 50 Regarding mitigating evidence, defendant argues there were statutory and nonstatutory factors that applied to warrant the imposition of a shorter sentence. He contends the statutory factors in mitigation included that (1) his "criminal conduct neither caused nor threatened serious physical harm to another" and (2) he "did not contemplate that his criminal conduct would cause or threaten serious physical harm to another." 730 ILCS 5/5-5-3.1(a)(1)-(2) (West 2024). He argues the nonstatutory mitigation factors included (1) his employment prior to his arrest, (2) support from family members who lived in the community, (3) his glaucoma, which could not be adequately treated while in custody, (4) his substance abuse addiction, (5) his mental health issues, and (6) his guilty plea to the underlying offense.

¶ 51 Initially, we note that "[a]bsent explicit evidence to the contrary, we *** presume the [trial] court considered all mitigating factors." *People v. Page*, 2022 IL App (4th) 210374, ¶ 52. Here, the trial court repeatedly stated that it had considered "all of the statutory factors in aggravation and mitigation whether [it] specifically mention[ed] those enumerated factors or not," and the record contains no explicit evidence that the court failed to consider any relevant factor.

The record also suggests that the court simply gave more weight to the aggravating factors, which was within its discretion. It is not the function of this court to reweigh the evidence on review. See *People v. Lawson*, 2018 IL App (4th) 170105, ¶ 28 ("A trial court's sentencing decision is entitled to great deference, and we may not substitute our judgment for the trial court's merely because we might have weighed the sentencing factors differently.").

¶ 52 Also, we find that the record contains conflicting evidence regarding several of the nonstatutory mitigating factors that defendant points to on appeal. Defendant first asserts that his "recent employment in the community" should have been viewed in mitigation. However, the PSI showed defendant had lengthy periods of unemployment as an adult. Although he reported that he worked at Dollar General for approximately one year prior to his arrest in April 2024, he declined to sign a release so that his employment information could be verified. Additionally, the PSI stated that "[a]ccording to the Sangamon County Court Services file, *** defendant was not employed when he was [originally] sentenced [in June 2023] or up until his incarceration [in April 2024]."

¶ 53 Defendant next argues that a nonstatutory factor in mitigation was that he had "family living in the community to support him in his rehabilitation." However, the PSI showed the grandmother who raised defendant was deceased, defendant had a poor relationship with his parents, and defendant reported having no "contact information" for his parents or his four half-siblings. Additionally, although defendant had six adult children and a girlfriend, he declined to provide "any further information" about those individuals.

¶ 54 Defendant further argues that he suffers from glaucoma and that there was a dispute as to whether he could be adequately treated while in custody. The PSI reflects that defendant was diagnosed with glaucoma and prescribed medication. However, to support his claim that he could not receive adequate treatment in custody, defendant cites a September 2024 hearing on a motion

to reconsider his pretrial detention. He does not point to any evidence or argument presented at his resentencing hearing regarding that condition or how it might be affected by a term of imprisonment in DOC.

¶ 55          Defendant also points to his substance abuse and mental health issues, which he acknowledges the trial court found were mitigating factors. We note, however, that the court also pointed out that defendant had failed to avail himself of previous opportunities to engage in substance abuse and mental health services or treatment. It noted that defendant had failed to undergo a mental health evaluation while on probation. Additionally, although defendant submitted evidence at his resentencing hearing that he had attended AA meetings and other classes in jail, his participation was only recent, occurring around the same time as the revocation of his probation and just a few months prior to his resentencing hearing. The court indicated its belief that defendant was unlikely to engage in substance abuse services or mental health treatment unless he was incarcerated in a facility where such services were available. We find no error in that determination.

¶ 56          Finally, as a nonstatutory factor in mitigation, defendant points out that he pleaded guilty to the underlying offense, which he claims shows he accepted legal responsibility for his conduct. While true, as the trial court found, defendant's comments at sentencing also indicated that he did not view the underlying offense as serious or "a big deal," which the court could properly have viewed as contradictory to defendant taking full responsibility for his conduct.

¶ 57          On appeal, defendant argues that it was "unfair" for the trial court to penalize him for his comments when he suffered from mental illness and reported that he had not taken his medication on the day of his resentencing. The record shows, however, that defendant explicitly stated during his resentencing hearing that he understood the proceedings. Additionally, comments

that he did not find the underlying offense to be serious were borne out by his criminal history and repeated commission of the same or similar offense. As stated, the March 2019 DWLR offense was defendant's twenty-first DWLR conviction, and the record showed his original probation sentence was revoked, in part, because of yet another DWLR violation. See *People v. Pina*, 2019 IL App (4th) 170614, ¶ 30 (stating a trial court may consider a defendant's conduct on probation in assessing his potential for rehabilitation); see also *People v. Jackson*, 149 Ill. 2d 540, 548 (1992) (holding "outstanding indictments or other criminal conduct for which there has been no prosecution or conviction may be considered in sentencing" when presented by witnesses who can be confronted and cross-examined and the defendant has an opportunity to rebut the testimony).

¶ 58 As indicated, defendant further complains that the trial court erred in its consideration of his criminal history. According to defendant, the court overlooked the fact that his criminal history was already used to elevate his DWLR offense to a Class 2 felony and to make him eligible for extended-term sentencing. Notably, though, this court has held that predicate offenses may be considered at sentencing "in the context of [a] defendant's criminal history." *People v. Brown*, 2023 IL App (4th) 220476, ¶ 52.

¶ 59 In this case, defendant's criminal history also included more than just the convictions used to elevate the charged offense or to impose his extended-term sentence. The evidence showed that defendant had several prior drug-related convictions, as well as multiple convictions for resisting or obstructing a peace officer, convictions for battery and domestic battery, three DUI convictions, and a conviction for theft. His history further included more DUI-related DWLR convictions than the 15 that were minimally required to elevate the charged offense, as well as 4 DWLR convictions that were not DUI-related. Further, the PSI indicated defendant had at least two prior Class 2 felony convictions upon which his extended-term sentence could

have been based. See 730 ILCS 5/5-3.2(b)(1) (West 2018) (providing an extended-term sentence may be imposed where the defendant has previously been convicted of the same, similar, or greater class felony and "when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts").

¶ 60        Defendant contends that the trial court "disregarded" that many of his prior offenses were nonviolent and misdemeanor convictions and that most of his felony convictions were clearly connected to his substance abuse struggles. Ultimately, we find the record fails to reflect that the court disregarded any evidence. Rather, the court noted that it had "carefully" reviewed defendant's PSI, which contained evidence of his criminal history. Although the court commented that defendant's substance abuse struggles were mitigating, it was also clearly concerned with both his failure to meaningfully engage in treatment and his continuous violations of the law.

¶ 61        We note "the trial court is not required to view drug addiction as a mitigating factor." (Internal quotation marks omitted.) *Musgrave*, 2019 IL App (4th) 170106, ¶ 60. "Instead, a history of substance abuse is a double-edged sword that the trial court may view as a mitigating or aggravating factor." (Internal quotation marks omitted.) *Id.* A sentencing court may properly conclude "that [the] defendant's drug addiction lessened his rehabilitative potential, increased the seriousness of the offense, increased the need to protect society, and increased the need for deterrence." (Internal quotation marks omitted.) *Id.* The trial court's comments in this case, when viewed in their entirety, indicated that it reached such conclusions, and we find no error.

¶ 62        Defendant further contends that the trial court erred in focusing on the length of his criminal history and not the nature of his prior offenses, and he suggests the court "disregarded" the fact that the PSI listed several criminal cases against him that had been dismissed. Again, the

record does not reflect that the court disregarded evidence and, instead, shows the court "carefully" considered defendant's PSI and its contents. Moreover, at various points during the sentencing hearing, the court clearly stated that it would only consider offenses of which defendant had been proven guilty. Also, even without consideration of the dismissed cases, defendant had a lengthy criminal history with numerous misdemeanor and felony convictions. The court could have properly found, and did find, that defendant's lengthy criminal history demonstrated his unwillingness to follow the law and lack of rehabilitative potential.

¶ 63    In arguing that the trial court erred in finding that he could not conform his conduct to society's expectations, defendant argues the court failed to consider that at the time of the underlying offense in March 2019, he "had not received a driving conviction or violation in over [seven] years." The record shows, however, that defendant committed other offenses during that time and spent a large portion of those seven years in custody. Specifically, prior to defendant's commission of the underlying offense, his last conviction for DWLR was in September 2011. He was placed on 12 months' probation for that offense, which resulted in a petition to revoke filed only a few months later, in January 2012. In January 2013, that petition was withdrawn per a plea agreement in defendant's 2012 theft case. The PSI then showed that defendant was charged with drug-related felonies in both 2013 and 2015. In August 2016, he was sentenced to three years in prison in both of those cases. The PSI showed that when sentenced, defendant was given credit for 451 days served in the 2013 case and 416 days served in the 2015 case, indicating he spent a substantial amount of time in custody prior to his 3-year prison sentences. The PSI also showed that defendant was "paroled" from DOC in April 2018. Less than a year later, he committed the underlying offense while still on "parole."

¶ 64    Here, the record shows the trial court properly considered the evidence presented

and that its findings were supported by the record. Defendant's 12-year sentence was well within the applicable statutory range and, given the evidence presented, was neither "greatly at variance with the spirit and purpose of the law" nor "manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *Snyder*, 2011 IL 111382, ¶ 36. Accordingly, we find no abuse of discretion by the court.

¶ 65                                    III. CONCLUSION

¶ 66          For the reasons stated, we affirm the trial court's judgment.

¶ 67          Affirmed.